COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Coleman and Fitzpatrick
Argued at Salem, Virginia


PYA/MONARCH AND RELIANCE
 INSURANCE COMPANY                          OPINION BY
                                   JUDGE JOHANNA L. FITZPATRICK
v.          Record No. 0454-95-3          APRIL 2, 1996

THOMAS EDWARD HARRIS

        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            M. Lanier Woodrum (Wooten & Hart, P.C., on
            briefs), for appellants.

            Berrell F. Shrader (Attorneys and Counselors
            at Law of Virginia, P.C., on brief), for
            appellee.


        In this workers' compensation case, PYA/Monarch and its

insurer, Reliance Insurance Company (collectively referred to as

employer), appeal the commission's decision awarding benefits to

Thomas Edward Harris (claimant).  Employer argues that the

commission erred in:  (1) finding that claimant's injury arose

out of his employment by improperly extending the increased

effects analysis used in idiopathic fall cases to an unexplained

accident, and (2) determining that claimant's injury caused his

disability.  We hold that claimant's injury was a noncompensable,

unexplained accident and reverse the commission's decision.[1]

        Claimant drove a truck for employer.  On March 2, 1994,

claimant encountered freezing rain and ice while making his

_____

        [1]Because we reverse on the "arising out of" issue, we do not
address the other issue raised by employer.

deliveries.  His last delivery stop was the Mountainview Market in Ironto, Virginia.  Claimant backed his truck up to the store, set the brakes, and entered the location code into the truck's computer.  Claimant then stood up, opened the truck door, and reached for the "grab bar" on the outside of the truck's cab.  During his deposition, claimant testified:  "I remember [reaching for the grab bar,] and that's all I remember.  And at that point, you know I don't know what happened from that point on.  At some time later I remember waking up, I'm laying on my left-hand side, I've got my left arm underneath of my head, and I'm on the pavement beside the truck."  (Emphasis added).  Claimant also stated that his wife thought "somebody coldcocked [him] when [he] got out of the truck."  When claimant awoke, he could not remember where he was, who he was, or any details of what had happened.  He had a knot on his head, and his neck was hurting and sore.  No one witnessed claimant's fall.

At the hearing on his application for benefits, claimant testified that the driver's seat in the truck's cab is located six-and-one-half to seven feet from the ground.  To enter the cab, claimant had to go up "two rungs on the ladder and then one on the step there going through the door."  On the date of claimant's fall, the surface of the truck's cab was covered with ice.

After his fall, claimant went to the emergency room at Lewis-Gale Hospital.  Dr. T. Gary Parrish examined claimant and

2

diagnosed his condition as "contusion of the head, possible concussion, loss of consciousness . . . possible seizure type activity."  Dr. Edward A. Waybright, a neurologist, also examined claimant and reported that the cause of claimant's fall was "unclear"; that claimant had "no history of prior head injury, seizure, or syncope"; and that tests "had not disclosed [the] specific cause of his fall."  Dr. Waybright admitted claimant for observation and restricted his driving for six months because of his loss of consciousness.  In an August 30, 1994 letter, Dr. Waybright noted that "[t]he evaluation done did rule out any evidence of seizure activity," and that claimant's fall could have been caused by "a cardiac irregularity, decrease of glucose in the blood, dizziness, or slipping while he exited the truck."

The commission was "persuaded that the fall was precipitated by the design or icy condition of the cab or both."  However, the commission made no specific finding regarding the cause of claimant's fall because it found that "the elevated height of the trailer cab constituted an added risk of the employment that caused or contributed to the claimant's injuries and loss of consciousness."  Additionally, the commission determined that the six-month restriction on claimant's driving was "a very real medical restriction that the claimant could not medically or legally ignore, and which was attributable to his work accident," and that employer was liable for claimant's disability.

Employer argues that claimant's fall was a noncompensable,

3

unexplained accident and that no credible evidence supports the commission's finding that the fall was caused by the design and icy condition of the truck cab. Additionally, employer asserts that the commission erred in applying the increased effects analysis used in idiopathic fall cases to an unexplained fall situation. We agree.

"To qualify for workers' compensation benefits, an employee's injuries must result from an event 'arising out of' and 'in the course of' the employment." Pinkerton's, Inc. v. Helmes, 242 Va. 378, 380, 410 S.E.2d 646, 647 (1991). "The concepts 'arising out of' and 'in the course of' employment are not synonymous and both conditions must be proved before compensation will be awarded." Marketing Profiles, Inc. v. Hill, 17 Va. App. 431, 433, 437 S.E.2d 727, 729 (1993) (en banc). The claimant must prove these elements by a preponderance of the evidence. Id.

In this case, employer does not dispute that claimant suffered an injury by accident occurring "in the course of" employment, but asserts that claimant failed to prove that his fall "arose out of" his employment. "The commission's decision that an accident arises out of the employment involves a mixed question of law and fact and is thus reviewable on appeal." Southside Virginia Training Ctr./Commonwealth of Virginia v. Shell, 20 Va. App. 199, 202, 455 S.E.2d 761, 763 (1995).

"All risks causing injury to a claimant can be brought

4

within three categories:  risks distinctly associated with the employment, risks personal to the claimant, and 'neutral' risks-- i.e., risks having no particular employment or personal character."  1 Arthur Larson, The Law of Workmen's Compensation § 7.00, at 3-12 (1990).  The category of risk in a particular case determines the analysis used in examining whether a claimant's injury "arose out of" his or her employment.

In cases in which the claimant alleges an injury by accident resulting from an employment-related risk, "[a] 'critical link' must exist between the conditions of the workplace and the injury in order for the injury to qualify as 'arising out of' the employment."  Pinkerton's, 242 Va. at 380, 410 S.E.2d at 647.  In proving the "arising out of" prong of the compensability test, a claimant has the burden of showing that "'there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.'"  Marketing Profiles, 17 Va. App. at 434, 437 S.E.2d at 729 (quoting Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938)).

> "[I]f the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment.  But [the arising out of test] excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment."

5

<u>Grove v. Allied Signal, Inc.</u>, 15 Va. App. 17, 19-20, 421 S.E.2d 32, 34 (1992) (quoting <u>R & T Investments, Ltd. v. Johns</u>, 228 Va. 249, 252-53, 321 S.E.2d 287, 289 (1984)).

In a personal risk or idiopathic case, the claimant's injury is one "caused by a preexisting personal disease of the employee." <u>Southland Corp. v. Parson</u>, 1 Va. App. 281, 283, 338 S.E.2d 162, 163 (1985). In Virginia, the general rule regarding idiopathic falls is that the claimant must prove that the injury was not caused by some idiopathic condition. <u>See</u> <u>Winegar v. International Telephone & Telegraph</u>, 1 Va. App. 260, 263, 337 S.E.2d 760, 761 (1985). "When an employee's injuries result from an idiopathic condition and no other factors intervene or operate to cause or contribute to the injuries sustained as a result of the idiopathic condition, no award shall be made." <u>Virginia Dep't of Transp. v. Mosebrook</u>, 13 Va. App. 536, 538, 413 S.E.2d 350, 351-52 (1992). However, "'the effects of [an idiopathic] fall are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle.'" <u>Southland Corp.</u>, 1 Va. App. at 284-85, 338 S.E.2d at 164 (citation omitted). Thus, in an idiopathic fall situation, the well-established increased risk doctrine applies, and no recovery is allowed unless the claimant proves that a condition of the employment increased the effects of his or her fall.

Finally, an unexplained fall or accident is encompassed in

6

the "neutral risk" category.  An unexplained injury does not result from any employment-related condition or from any idiopathic condition of the claimant.  <u>Memorial Hospital of Martinsville v. Hairston</u>, 2 Va. App. 677, 682, 347 S.E.2d 527, 529 (1986).  In Virginia, when an unexplained injury by accident in the course of employment results in the <u>death</u> of an employee, a presumption arises that the injury "arose out of" the employment.  <u>See</u> <u>id.</u> at 680-81, 347 S.E.2d at 528 (emphasis added) (citing <u>Southern Motor Lines v. Alvis</u>, 200 Va. 168, 171-72, 104 S.E.2d 735, 738 (1958)).  However, the Virginia Supreme Court has specifically refused to extend the unexplained death presumption to the unexplained accident context.  <u>Pinkerton's</u>, 242 Va. at 380-81, 410 S.E.2d at 648.

> In <u>Pinkerton's</u>, the Court explained:
> Every unexplained accident, by definition, means that no one can relate how the accident happened.  The reason for the inability to recall may be based on a preexisting or resulting, temporary or permanent, physical condition of the claimant, as well as mere inattention at the moment of the accident.  If mere inability to recall the events is the rationale for application of the presumption, then it would also be logical that the claimant should be entitled to the benefit of the presumption in any of these circumstances, or whenever there is an unexplained accident.

<u>Id.</u> at 381, 410 S.E.2d at 648.  The Supreme Court concluded that "[b]roadening the use of the [unexplained death] presumption to such an extent [would] significantly alter[] the jurisprudence of workers' compensation law.  This change . . . is more properly a

7

matter of policy, a prerogative of the legislative branch of government."  Id.  Professor Larson has noted that, "[i]n a pure unexplained-fall case, there is no way in which an award can be justified as a matter of causation theory except by a recognition that [positional risk] but-for reasoning satisfies the 'arising' requirement."  1 Larson, supra, § 10.31(a), at 3-94.  However, "Virginia has adopted an 'actual risk' test and has rejected the 'positional risk' test followed by other jurisdictions."  Marion Correctional Treatment Ctr. v. Henderson, 20 Va. App. 477, 480, 458 S.E.2d 301, 303 (1995).  Thus, in an unexplained fall case in Virginia, a claimant must prove by a preponderance of the evidence that the fall "arose out of" the employment by establishing a causal connection between his or her employment and the fall.[2]

In the instant case, claimant's fall was an unexplained

---

[2]In addressing the "arising out of" requirement in unexplained fall cases, courts have adopted three approaches.  First, some courts require the claimant to show a causal connection between the injury and his or her employment.  Next, other courts allow an inference that the claimant's fall arose out of the employment if the claimant can show that no idiopathic condition caused the fall.  Finally, the majority of courts use the positional risk doctrine to allow recovery in unexplained fall cases.  Under the positional risk doctrine, the claimant is not required to exclude idiopathic causes.  If the claimant can establish that the injury occurred "in the course of" his or her employment, a presumption arises that the injury also "arose out of" the employment.  See Circle K Store No. 1131 v. Industrial Comm'n, 796 P.2d 893, 897-98 (Ariz. 1990) (en banc) (discussing the three approaches used in unexplained fall cases and adopting the positional risk doctrine).  In Pinkerton's, the Virginia Supreme Court adopted the first approach and placed the burden on the claimant to show a causal connection between her accident and her employment.  242 Va. at 381, 410 S.E.2d at 648.

accident. The commission was "persuaded" that the icy condition and design of the truck cab caused claimant's fall, but no credible evidence supports this finding. The mere fact that the truck cab was icy or that the cab was seven feet from the ground is insufficient to establish the basis for the fall. Claimant could not recall any details of the accident, and the last thing he remembered was reaching for the grab bar on the side of the truck cab. He never testified that he slipped or tripped on one of the ladder rungs, or that he lost his grip on the grab bar. Dr. Waybright's speculation that claimant's fall could have been caused by either "a cardiac irregularity, decrease of glucose in the blood, dizziness, or slipping while he exited the truck" does not explain the nature of the fall. Thus, claimant failed to prove the requisite causal connection between his employment and his fall.

Additionally, in analyzing whether claimant's fall arose out of his employment, the commission improperly extended the increased effects analysis properly used in idiopathic fall cases to an unexplained fall situation. We are bound by the rationale of Pinkerton's that an unexplained fall is not compensable "[i]n the absence of a showing that the [injury] 'arose out of' the employment." 242 Va. at 381, 410 S.E.2d at 648. In Southland Corp., we recognized the distinction between unexplained falls and idiopathic falls, and did "not consider the consequences of an unexplained fall by an employee." 1 Va. App. at 284, 338

S.E.2d at 163.

No credible evidence established that claimant's fall was caused by an idiopathic condition. The medical evidence ruled out the possibility that a seizure caused claimant's fall. Although Dr. Waybright indicated several other idiopathic conditions as potential causes of claimant's fall, he also considered it equally possible that claimant slipped when climbing down from the driver's seat of the truck cab. Thus, the increased risk analysis used in idiopathic fall cases was inappropriate in the instant case because claimant's fall was clearly an unexplained accident controlled by the Supreme Court's rationale in Pinkerton's.

Because claimant is not entitled to a presumption that his fall arose out of his employment, and because claimant failed to prove the requisite causal connection between his employment and his accident, the commission erred in awarding claimant compensation. Accordingly, the decision of the commission is reversed.

                                        Reversed.