COURT OF APPEALS OF VIRGINIA

Present: Judges Chafin, Malveaux and Senior Judge Frank
Argued at Norfolk, Virginia

STEVEN ECHEVARRIA

v.      Record No. 0105-16-1

CITY OF CHESAPEAKE

MEMORANDUM OPINION[*] BY
JUDGE TERESA M. CHAFIN
OCTOBER 18, 2016

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(Michael F. Imprevento; Breit Drescher Imprevento P.C., on brief),
for appellant.[1]

Ryan C. Samuel, Assistant City Attorney, for appellee.

Steven Echevarria appeals a decision from the Virginia Workers' Compensation

Commission denying him workers' compensation benefits for an injury he sustained when he

slipped on a stairway during the course of his employment with the City of Chesapeake.

Specifically, Echevarria contends that the Commission erred by concluding that the evidence

presented did not establish that his injury arose out of his employment. For the reasons that

follow, we affirm the Commission's decision.

I. BACKGROUND

On appeal, this Court views the evidence in the light most favorable to the City of

Chesapeake, the prevailing party before the Commission. See Liberty Mut. Ins. Corp. v.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] An attorney did not appear on behalf of Echevarria at the oral argument scheduled for
this case.

Herndon, 59 Va. App. 544, 550, 721 S.E.2d 32, 35 (2012). So viewed, the evidence is as follows.

Echevarria, a police officer, slipped on a stairway while he was investigating a potential burglary in progress at a private residence. As he was coming down the stairs after ensuring that no suspects were hiding on the second floor of the residence, Echevarria lost his balance and slipped. When he slipped, he caught himself by grabbing the safety railing of the stairway. Echevarria avoided falling, but he injured his arm when he grabbed the railing. He was eventually diagnosed with a ruptured tendon in his left bicep, and he underwent surgery to repair the tendon.

The body cameras worn by Echevarria and two other police officers assisting in the investigation recorded his accident. The videos from the body cameras showed Echevarria walking down carpeted stairs that appeared to be in good repair and they did not reveal any obvious defects in the stairway that caused him to slip. Rather, they simply showed Echevarria slipping in an area where the stairway made a "u-turn" between the base of the stairs and the second floor. As there were no intermediate landings on the stairway, the stairs fanned out to negotiate the turn, resulting in the stairs being narrower on the inside of the turn and wider on the outside of the turn.

In addition to recording the actual accident, the body camera videos also captured one of the homeowners' responses to Echevarria's injury. Immediately after Echevarria slipped, one of the homeowners who was standing at the base of the stairway exclaimed, "Don't hurt yourself! I just slipped down the stairs. I just slipped down earlier." The homeowner then said to another individual who was not visible in the video, "I told you to call that man." A short time later, the homeowner told another officer that she had fallen on the stairs earlier that day. The homeowner did not provide any further explanation regarding the cause of her fall.

- 2 -

Although Echevarria slipped near the "u-turn" in the stairway, he did not attribute his accident to the turn or any other defect or abnormality in the stairs. Furthermore, he did not claim that he slipped because he was distracted or rushed by the duties of the investigation. In response to his employer's request for admissions, Echevarria stated that he was "unaware of any defect in the steps, staircase or landing" and admitted that there were no foreign substances or materials on the stairway when he slipped. He also admitted that he was not "hurrying," "distracted," or "carrying anything" at the time of the accident.

When he testified before the deputy commissioner presiding over his workers' compensation claim, Echevarria testified that he stepped down on the center of a step just before he slipped. He described that step as "solid." Another police officer participating in the investigation confirmed that the steps were of a "normal" height. Echevarria testified that he was wearing his standard police uniform when he slipped, including the "slip-resistant" shoes provided by the police department. He also admitted that his accident occurred in daylight and that he was the only officer investigating the potential burglary who slipped on the stairway.

The videos showing Echevarria's accident were reviewed by the deputy commissioner. The homeowner, however, did not testify at the hearing concerning Echevarria's workers' compensation claim or provide evidence about the stairway through another method. Echevarria testified that he had not inspected the stairway for defects since the time of his accident, and he did not present any additional evidence beyond the videos from the body cameras to establish that the stairway was unusual or defective.

After reviewing the evidence presented by the parties, the deputy commissioner concluded that Echevarria's injury arose from his employment. Based primarily on the statements of the homeowner, the deputy commissioner found that Echevarria slipped due to a defect in the stairway. While the deputy commissioner acknowledged that the homeowner's

- 3 -

statements did not establish the details of the defect, he determined that the homeowner's statements implied that a defect existed in the stairway by referencing a previous fall and the need for corrective action.

The full Commission reversed the deputy commissioner's decision. Expressly noting that there were no obvious defects on the stairway, the Commission declined to infer that a defect caused Echevarria to slip. The Commission concluded that the homeowner's statements did not establish that her previous fall was caused by a defect in the stairway, and explained that she "may have fallen on the stairs for countless reasons beyond a defect with the step at issue." Additionally, the Commission reasoned that the homeowner could have been referring to a different defect that did not contribute to Echevarria's accident.

One commissioner dissented from the majority's opinion. The dissenting commissioner concluded that the circumstantial evidence presented in this case established that Echevarria slipped due to a defect in the stairway. Citing the remedial purposes of the Virginia Workers' Compensation Act, the dissenting commissioner inferred that the homeowner's statements in the videos from the police officers' body cameras referred to a defect in the stairway that caused Echevarria's accident. This appeal followed the Commission's decision.

## II. ANALYSIS

On appeal, Echevarria argues that the Commission erred by concluding that his injury did not arise out of his employment. The Commission's decision that an accident arises out of employment presents a mixed question of law and fact. See Herndon, 59 Va. App. at 555, 721 S.E.2d at 37. While we review the ultimate legal issue *de novo*, "the [C]ommission's factual findings are conclusive and binding on this Court when those findings are based on credible evidence." City of Waynesboro v. Griffin, 51 Va. App. 308, 312, 657 S.E.2d 782, 784 (2008);

see also Code § 65.2-706(A) ("[A]n award of the Commission . . . shall be conclusive and binding as to all questions of fact.").

To obtain compensation for injuries, a claimant must prove by a preponderance of the evidence that he or she suffered an injury by accident "arising out of and in the course of the employment."[2] Code § 65.2-101. In determining whether an injury arises out of employment,

> "Virginia employs the actual risk test. A claimant's injury arises out of the employment if the manner in which the employer requires the work to be performed is causally related to the resulting injury." . . . "[A]n injury does not arise out of the employment when it 'cannot be fairly traced to the employment as a contributing proximate cause and . . . comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood.'"

Southside Va. Training Ctr. v. Ellis, 33 Va. App. 824, 828-29, 537 S.E.2d 35, 37 (2000) (quoting Vint v. Alleghany Reg'l Hosp., 32 Va. App. 60, 63-64, 526 S.E.2d 295, 297 (2000)).

"Simple acts of walking, bending, or turning, without any other contributing environmental factors, are not risks of employment." Id. at 829, 537 S.E.2d at 37. "The mere happening of an accident at the workplace, not caused by any work related risk or significant work related exertion, is not compensable." Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989)). "'[A] "critical link" must exist between the conditions of the workplace and the injury in order for the injury to qualify as "arising out of" the employment.'" PYA/Monarch & Reliance Ins. Co. v. Harris, 22 Va. App. 215, 221, 468 S.E.2d 688, 691 (1996) (quoting Pinkerton's, Inc. v. Helmes, 242 Va. 378, 380, 410 S.E.2d 646, 647 (1991)).

---

[2] The City of Chesapeake conceded that Echevarria's injury was caused by an accident that occurred during the course of his employment.

Perhaps the most common examples of the arising-out-of principle are the cases involving tripping on steps. An employee who trips while walking up a staircase at work cannot recover compensation unless something about the steps (or some other condition of the workplace) presented a hazard or danger peculiar to the worksite. . . . [I]f there is "nothing unusual or wrong with the steps," an employee who trips over them cannot show the accident "arose out of" the employment. [County of Chesterfield v.] Johnson, 237 Va. [180,] 185-86, 376 S.E.2d [73,] 76 [(1989)].

On the other hand, if the steps are "unusual" because they are "slightly higher than normal" or otherwise peculiar, then tripping over them would involve an accident arising out of the employment. Id. In such cases, the steps present an *enhanced* risk, qualitatively different from the steps most people walk up and down on and off the job.

Bernard v. Carlson Cos.-TGIF, 60 Va. App. 400, 407, 728 S.E.2d 508, 511-12 (2012); see also

County of Buchanan Sch. Bd. & AIU Ins. Co. v. Horton, 35 Va. App. 26, 29, 542 S.E.2d 783,

784-85 (2001) ("[I]n order for a fall on stairs to be compensable there must either be a defect in

the stairs or [the] claimant must have fallen as a result of a condition of the employment.").

In certain situations, an injured worker may establish that his or her injury arose out of

employment solely through circumstantial evidence.

[T]he mere nonexistence of direct evidence in the form of the claimant's memory or an eyewitness' account does not, in and of itself, preclude an award of benefits.

On the contrary, the [C]ommission may find an explanation for an accident based on circumstantial evidence, when that evidence "allows an inference that the claimant suffered an injury by accident arising out of . . . his employment."

Griffin, 51 Va. App. at 314-15, 657 S.E.2d at 785 (quoting Marketing Profiles, Inc. v. Hill, 17

Va. App. 431, 433, 437 S.E.2d 727, 728 (1993) (*en banc*)).

Nevertheless, circumstantial evidence implying that an employee's accident arose from

his or her employment must determine the issue beyond surmise or mere conjecture in order to

support an award of workers' compensation benefits. See id. at 315, 657 S.E.2d at 785; Sullivan

v. Suffolk Peanut Co., 171 Va. 439, 443, 199 S.E. 504, 506 (1938) ("[A workers' compensation] award based upon surmise or conjecture will be set aside."). "If the evidence shows that it is just as probable that the disability resulted from a cause which is not compensable, as it is that it resulted from one which is compensable, the claimant has not sustained the burden of proof." Van Geuder v. Commonwealth, 192 Va. 548, 557-58, 65 S.E.2d 565, 571 (1951) (quoting Carter v. Hercules Powder Co., 182 Va. 282, 288, 28 S.E.2d 736, 738 (1944)).

Echevarria's primary argument on appeal is based solely on the homeowner's statements. He contends that the statements the homeowner made immediately after his accident proved that a defect existed in the stairway and that the Commission should have inferred that the defect caused him to slip. According to Echevarria, the homeowner referenced a defect that had the potential to cause similar falls and needed to be repaired. While the homeowner may have been referencing a dangerous defect in the stairway, Echevarria's reliance on the homeowner's statements to establish that his injury arose from such a defect fails for two reasons. The evidence presented to the Commission did not establish that a defect caused Echevarria to slip, and the homeowner's statements are ambiguous concerning the cause of her fall.

Echevarria's own testimony and the other evidence presented in this case suggested that he did not slip due to a defect in the stairway. Echevarria candidly admitted that he was unaware of any defects in the stairway that contributed to his accident. His testimony was corroborated by the videos from the officers' body cameras. These videos showed a stairway in good repair without any obvious defects. Although the stairway had a "u-turn" with steps of varying widths, Echevarria testified that he stepped on the center of a "solid" step just before his accident rather than the narrow portion on the inside of a step negotiating the turn.

The homeowner's statements about a potential defect in the stairway are unclear at best. While the homeowner stated that she fell on the stairway earlier that day, she did not provide any

explanation concerning the cause of her fall. As the Commission noted, the homeowner could have fallen for numerous reasons that did not involve a defect in the stairway. For example, she could have been distracted or ill when she descended the stairway. She also could have been engaged in an activity that added to the difficulty of negotiating the stairway, such as carrying a large or heavy item. Thus, the Commission would have had to speculate to infer that the homeowner fell due to a defect in the stairway rather than any other reason.

Furthermore, even if we assume that the homeowner fell due to a defect in the stairway, no evidence established that Echevarria fell due to the same defect. Since the evidence presented did not establish the nature of the defect that may or may not have caused the homeowner to fall on the stairway, we cannot infer that the same defect caused Echevarria to slip. The homeowner could have fallen due to a defect on a different part of the stairway. Again, the Commission would have had to speculate to conclude that Echevarria slipped due to the same defect that caused the homeowner to fall.

In summary, the evidence did not establish that a defect in the stairway contributed to Echevarria's injury. The homeowner's statements cannot be construed as proof establishing the existence of a defect in the stairway, and Echevarria failed to present any other evidence affirmatively establishing the existence of a defect in the stairway that caused him to slip. Moreover, even if we assume that the homeowner's statements referenced a defect in the stairway, the record did not establish that the same defect caused Echevarria to slip. Under these circumstances, an award of workers' compensation benefits would be based on pure speculation.

III.  CONCLUSION

In the present case, the circumstantial evidence presented by Echevarria did not prove that his injury arose from his employment.[3]  As Echevarria failed to prove that a defect in the stairway or a condition of his employment caused his injury, the Commission did not err by denying him workers' compensation benefits.  Accordingly, we affirm the Commission's decision.

Affirmed.

---

[3] While we note that the Virginia Workers' Compensation Act should generally receive a liberal construction in favor of the injured worker to carry out its remedial purposes, the words "arising out of and in the course of employment" cannot be construed to allow compensation on every claim asserted.  See Southside Va. Training Ctr., 33 Va. App. at 830, 537 S.E.2d at 37.